**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

UNITED STATES OF AMERICA,            )
                                     )
         Plaintiff,                  )
                                     )        Civil Action No.
    v.                               )        JURY TRIAL DEMANDED
                                     )
                                     )
CADENCE BANK, N.A,                   )
                                     )
         Defendant.                  )
_____)

## COMPLAINT

### INTRODUCTION

1.      The United States of America brings this action against Cadence

Bank, N.A. ("Cadence Bank," "Cadence," or the "Bank") under the Fair Housing

Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Equal Credit Opportunity Act

("ECOA"), 15 U.S.C. §§ 1691–1691f.

2.      The FHA and ECOA prohibit creditors, such as banks, from

discriminating in home loans or other residential credit transactions on the basis

of race, color, national origin, and other characteristics.

3.      "Redlining" is one type of discrimination prohibited under the FHA

and ECOA.  Redlining occurs when lenders deny or discourage applications or

1

avoid providing loans and other credit services in neighborhoods based on the race, color, or national origin of the residents of those neighborhoods.

4.     From 2013 through 2017, Cadence Bank engaged in a pattern or practice of unlawful redlining.  As alleged in detail herein, the Bank avoided providing home loans and other home mortgage services in majority-Black and Hispanic neighborhoods in and around Houston, Texas.

5.     Cadence Bank's redlining practices included locating and maintaining nearly all its branches and all its loan officers in majority-white neighborhoods.  The Bank also concentrated its outreach, advertising, and marketing in majority-white neighborhoods and avoided majority-Black and Hispanic ones.  As a result of these practices, the Bank generated disproportionately low numbers of loan applications and home loans from majority-Black and Hispanic neighborhoods in Houston compared to similarly-situated lenders.

6.     Cadence Bank's conduct and practices were intended to deny, and had the effect of denying, residents of majority-Black and Hispanic neighborhoods equal access to home loans and otherwise discouraged these residents from applying for home loans.  The Bank's conduct was not justified by a business necessity and was not necessary to achieve a substantial, legitimate,

non-discriminatory interest.

## JURISDICTION AND VENUE

7.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1345, 42 U.S.C. § 3614(a), and 15 U.S.C. § 1691e(h) because the action arises under the laws of the United States, and the United States brings this case as a plaintiff.

8.     Venue is proper in this Court under 28 U.S.C. § 1391(a)-(b) because Cadence's principal place of business is located within this judicial district.

## PARTIES

9.     Plaintiff the United States brings this action to enforce the provisions of the FHA and ECOA.  The FHA and ECOA authorize the Attorney General to bring a civil action in federal district court whenever he has reason to believe that an entity is engaged in a pattern or practice of resistance to the full enjoyment of rights secured by the FHA and ECOA.  42 U.S.C. § 3614(a); 15 U.S.C. § 1691e(h).  The FHA further authorizes the Attorney General to bring suit where the defendant has denied rights to a group of persons and that denial raises an issue of general public importance.  42 U.S.C. § 3614(a).

10.     Defendant Cadence Bank, N.A. is a full-service bank headquartered in Atlanta, Georgia, and it operates 98 branches throughout Alabama, Florida,

Georgia, Mississippi, Tennessee, and Texas.  The Bank currently operates 11 branches in the Houston area.  As of September 30, 2020, Cadence's total assets equaled $18.4 billion.  From 2012 to 2019, mortgage lending in the Houston area alone accounted for 40 percent of Cadence's total home mortgage business.

11.     Cadence Bank is subject to the regulatory authority of the Office of the Comptroller of the Currency ("OCC").  Because its assets exceed $10 billion, Cadence Bank is also regulated by the Consumer Financial Protection Bureau.

12.     Cadence Bank is subject to the FHA, ECOA, and their respective implementing regulations, 24 C.F.R. pt. 100, 12 C.F.R. pt. 1002.

13.     Cadence Bank is a "creditor" within the meaning of ECOA, 15 U.S.C. § 1691a(e), and is engaged in "residential real estate-related transactions" under the FHA, 42 U.S.C. § 3605.

## FACTUAL ALLEGATIONS

### Cadence Bank's Houston Assessment Area

14.     With over seven million residents as of 2019, the Houston Metropolitan Statistical Area ("MSA") is the fifth most populous region of the country and also one of the most diverse.  No racial or ethnic group accounts for a majority of the population.  According to data from the United States Census Bureau, in 2018, the region was 37.6 percent Hispanic, 35.5 percent non-Hispanic

white ("white"), and 17 percent non-Hispanic Black ("Black").  Fifty-two percent of census tracts in the Houston MSA are majority-Black and Hispanic.  As used in this Complaint, a "majority-Black and Hispanic" tract is one where more than 50 percent of the residents are identified as either "Black or African American" or "Hispanic or Latino" by the United States Census Bureau.[1]

15.     As a depository bank, Cadence is subject to the requirements of the Community Reinvestment Act, 12 U.S.C. §§ 2901–2908, and its enabling regulations, which require most banks to meet the credit needs of the communities that they serve.  Each bank self-identifies the communities that it serves in what are called the bank's "assessment areas."  Federal regulators look at a bank's assessment area in evaluating whether an institution is meeting the credit needs of its entire community.

16.     Cadence Bank's self-designated assessment area in Houston ("Houston assessment area" or "assessment area") consists of three contiguous counties where 87 percent of the Houston MSA's population resides: Fort Bend, Harris, and Montgomery.

---

[1] The complaint uses "majority-Black and Hispanic census tract" "majority-Black and Hispanic area" and "majority-Black and Hispanic neighborhood" interchangeably.  The complaint does the same for "majority-white tract," "majority-white area" and "majority-white neighborhood."

17.     Fifty-six percent of the census tracts in Cadence's Houston assessment area, or 517 tracts, are majority-Black and Hispanic census tracts.  *See* Ex. A.  In addition, 17 percent of Harris County residents, 6 percent of Fort Bend County residents, and 8 percent of Montgomery County residents – totaling over 700,000 people – are Spanish-speaking with limited English proficiency.

**Cadence Bank's Houston-Area Branches Are Concentrated in Majority-White Neighborhoods**

18.     From 2013 through 2017, Cadence Bank's branches in the Houston MSA were located to serve the credit needs of residents in majority-white neighborhoods and to avoid serving the credit needs of residents in majority-Black and Hispanic neighborhoods.  *See* Ex. A.

19.     From 2013 through 2017, more than half of the census tracts in the Bank's Houston assessment area – 56 percent – were majority-Black and Hispanic.  Despite the racial composition of its assessment area, only one of the Bank's 13 branches open during that time period was located in a majority-Black and Hispanic neighborhood.  The remaining 12 branches were located in majority-white neighborhoods.  *See* Ex. A.

20.     Cadence Bank knew its branches were not serving the credit needs of majority-Black and Hispanic areas but did not take steps to address this failure for years.  Cadence entered the Houston market in 2012, opening one branch in a

majority-white neighborhood.  Later that year, Cadence acquired Encore Bank and its 12 branches, all but one of which were located in majority-white neighborhoods.

21.    The Bank's only branch in a majority-Black and Hispanic area was located in a downtown business district where the branch was intended to serve commuting workers rather than residents.  By 2017, this area had become majority-white due to demographic change.

22.    Thus, according to United States Census Bureau data, by 2017, all of the Bank's branches were located in majority-white areas, and not one branch was located in a majority-Black and Hispanic area.

23.    Cadence Bank did not open a branch in a majority-Black and Hispanic area until 2018, six years after it entered the Houston market, and then only after the Office of the Comptroller of the Currency, which regulates Cadence, began a fair lending examination of the Bank.

24.    By concentrating nearly all of its branches in majority-white areas, Cadence Bank discouraged residents who lived in majority-Black and Hispanic areas from applying for and obtaining home loans and restricted their access to credit.

**Cadence Bank's Loan Officers Served Majority-White Neighborhoods but
Not Majority-Black and Hispanic Neighborhoods in Houston**

25.     From 2013 through 2017, Cadence Bank's loan officers served the
credit needs of majority-white neighborhoods but did not serve the credit needs of
majority-Black and Hispanic neighborhoods in its Houston assessment area.

26.     Cadence Bank relied primarily on its loan officers to generate loans
and serve the credit needs of residents in its assessment area.

27.     Cadence Bank's loan officers were assigned to, or worked out of, the
Bank's 13 branches, all but one of which was located in a majority-white area.
The Bank's loan officers generated the majority of home loan applications and
made the majority of home loans in the areas immediately surrounding its
branches.

28.     From 2013 through 2017, Cadence Bank assigned loan officers so
that most branches in majority-white areas had one or more loan officers.  The
Bank did not assign a single loan officer, even on a part-time basis, to the lone
branch located in a majority-Black and Hispanic area.

29.     If a resident or prospective borrower in that majority-Black and
Hispanic area wanted to apply for a home loan from Cadence at the local branch,
he or she would have to make an appointment in advance to meet with a loan

officer there.  This was an additional step that customers at most other branches –
all of which were in majority-white neighborhoods – were not required to take.

30.     From 2013 through 2017, Cadence Bank did not employ or hire loan
officers with ties or relationships to majority-Black and Hispanic areas or with the
requisite Spanish language skills necessary to provide credit services to residents
in some of these areas.

31.     From 2013 through 2017, Cadence Bank did not direct or train its
loan officers or other staff to take steps to serve the credit needs of majority-Black
and Hispanic areas.

### Cadence Bank's Outreach and Marketing Targeted Majority-White Neighborhoods and Not Majority-Black and Hispanic Neighborhoods in Houston

32.     From 2013 through 2017, Cadence Bank did almost no outreach and
marketing to majority-Black and Hispanic neighborhoods in its assessment area
and instead concentrated its outreach and marketing in majority-white
neighborhoods.

33.     During this time, Cadence Bank relied almost entirely on its network
of branches and loan officers to conduct outreach and marketing to the
surrounding areas.  The Bank's loan officers, all of whom worked in branches in
majority-white neighborhoods, conducted outreach and marketing by seeking

referrals from real estate agents, builders, and developers in the surrounding area.

34.     Aside from purchasing two advertisements in a local newspaper serving the Black community, Cadence Bank took no meaningful steps to encourage applications from outside of its branch network or from majority-Black and Hispanic areas.  Nor did the Bank market or conduct outreach in these areas.

35.     Cadence Bank neither directed nor trained its loan officers to increase their sources of referrals from majority-Black and Hispanic neighborhoods.

36.     Cadence Bank did not advertise at all in Spanish.

**Disproportionately Low Numbers of Home Loan Applications from Majority-Black and Hispanic Neighborhoods in Houston**

37.     Cadence Bank's policies and practices alleged herein – including the concentration of nearly all its branches, loan officers, marketing, and outreach in majority-white neighborhoods – have discouraged applicants in majority-Black and Hispanic neighborhoods in its Houston assessment area from applying for and obtaining home loans and other mortgage-related services.

38.     Cadence Bank's own data on loan applications and originations that it is required to report to regulators under the Home Mortgage Disclosure Act of 1975 ("HMDA"), 12 U.S.C. §§ 2801–2811, confirms that Cadence Bank has

avoided serving majority-Black and Hispanic neighborhoods in its Houston assessment area.

39.     Between 2013 and 2017, Cadence Bank significantly underperformed its "peer lenders" in generating home mortgage applications from majority-Black and Hispanic neighborhoods.  "Peer lenders" are similarly-situated financial institutions that received between 50 percent and 200 percent of the Bank's annual volume of home mortgage loan applications.

40.     The disparity between the rate of applications generated by Cadence and the rate generated by its peer lenders from majority-Black and Hispanic neighborhoods was both statistically significant – meaning unlikely to be caused by chance – and sizable across the five-year time period from 2013 through 2017.

41.     Specifically, of the nearly 1,600 HMDA-reportable mortgage applications Cadence generated for single-family dwellings from 2013 through 2017 in the Houston assessment area, 14 percent came from residents of majority-Black and Hispanic areas.  By contrast, the Bank's peers generated 36 percent of their nearly 128,000 applications from these same majority-Black and Hispanic neighborhoods.

42.     In other words, from 2013 through 2017, the Bank's peer lenders generated applications from majority-Black and Hispanic areas at more than 2.5

times the rate of Cadence Bank.  And when disparities were calculated for individual years, the Bank's peers generated applications at a rate between approximately 1.5 times and 8.3 times the rate of Cadence, depending on the year. These disparities are statistically significant across the five-year period and in every year analyzed.

43.     Even when Cadence generated applications from majority-Black and Hispanic tracts, the applicants themselves were disproportionately white.  From 2013 to 2017, the majority – 54 percent – of the loan applications Cadence drew from majority-Black-and-Hispanic neighborhoods were from white applicants; only 36 percent were from Black or Hispanic applicants.

44.     The statistically significant disparities between applications Cadence Bank generated from majority-Black and Hispanic neighborhoods and those that its peers generated show that there were residents in majority-Black and Hispanic areas in Houston who were seeking home loans.  Cadence had no legitimate, non-discriminatory reason to draw so few applications from these areas.

45.     These data show a statistically significant failure by Cadence Bank to draw applications for home loans and provide residential mortgage services to residents of majority-Black and Hispanic neighborhoods on a non-discriminatory basis when compared with similar lenders from 2013 through 2017.

**Disproportionately Low Numbers of Home Loans Made in Majority-Black
and Hispanic Neighborhoods**

46.     Cadence Bank's lending practices as alleged herein have discouraged
applicants in majority-Black and Hispanic neighborhoods from seeking home
loans. As a result, the Bank made a smaller percentage of HMDA-reportable
residential mortgage loans in these neighborhoods compared to its peers between
2013 and 2017.

47.     From 2013 to 2017, Cadence Bank made approximately 1,110
HMDA-reportable residential mortgage loans for single-family dwellings in its
Houston assessment area.  Of those loans, 14 percent were made to residents of
majority-Black and Hispanic census tracts.  By contrast, Cadence Bank's peers
made nearly 78,000 HMDA-reportable residential mortgage loans in the same
area, of which 32 percent went to residents of majority-Black and Hispanic census
tracts.

48.     In other words, from 2013 through 2017, the Bank's peer lenders
made home loans from majority-Black and Hispanic areas at more than 2.3 times
the rate of Cadence Bank.  When disparities were calculated for individual years,
Cadence Bank's peers made loans at a rate between approximately 1.4 times and
5.3 times the rate of Cadence Bank, depending on the year.  The disparities are
statistically significant across the five-year period, and for each individual year

from 2013 through 2017.

49.    Furthermore, of the loans Cadence Bank made in majority-Black and Hispanic areas, the majority – 59 percent – went to white borrowers, while only 33 percent went to Black and Hispanic borrowers.

50.    The statistically significant disparities between the number of home loans Cadence Bank made from majority-Black and Hispanic neighborhoods and those that its peers made show that there were residents in majority-Black and Hispanic areas in Houston who were seeking and qualified for home loans. Cadence had no legitimate, non-discriminatory reason to make so few home loans from these areas.

51.    These data show a statistically significant failure by Cadence Bank to make home loans and provide residential mortgage services to residents in majority-Black and Hispanic neighborhoods on a non-discriminatory basis when compared with similar lenders from 2013 through 2017.

**OCC's Referral and the United States' Investigation**

52.    In October 2017, Cadence Bank's prudential regulator, the Office of the Comptroller of the Currency, initiated a fair lending examination of the Bank focused on redlining.

53.    After completing its examination and statistical analyses, the OCC

concluded that, between 2014 and 2016, Cadence Bank had likely "engaged in a violation of the Fair Housing Act" because its "mortgage operations in Houston were structured to avoid providing access to credit to residents seeking first-lien mortgage loans in majority-minority census tracts" in its Houston assessment area.

54.    By correspondence dated January 30, 2019, the OCC referred this matter to the United States Department of Justice.

55.    On April 4, 2019, the United States notified Cadence Bank that it was opening an investigation into whether the Bank had engaged in unlawful redlining in violation of the FHA and ECOA and requested documents related to Cadence's lending practices for the time period January 1, 2014, to the present.

56.    Cadence Bank's discriminatory practices as described herein have intended to discriminate and have had the effect of discriminating on the basis of race, color, and national origin.

## COUNT I – DISCRIMINATION ON THE BASIS OF RACE, COLOR, AND NATIONAL ORIGIN

57.    The United States incorporates all prior paragraphs of the Complaint as if fully set forth herein.

58.    Persons who have been victims of Cadence Bank's discriminatory

policies and practices are "aggrieved" as defined in 42 U.S.C. § 3602(i) and 15 U.S.C. § 1691e(i), and may have suffered damages as a result of the Bank's conduct in violation of both the Fair Housing Act and the Equal Credit Opportunity Act, as described above.

59.   Defendant Cadence Bank's actions as alleged herein constitute:

a.   Discrimination on the basis of race, color, and national origin in making available residential real estate-related transactions, or in the terms or conditions of residential real estate-related transactions, in violation of the Fair Housing Act, 42 U.S.C. § 3605(a), and its implementing regulations, 24 C.F.R. § 100.110(b), 24 C.F.R. § 100.120(a)–(b), and 24 C.F.R. § 100.50(b)(1)–(3);

b.   Discrimination on the basis of race, color, and national origin in the terms, conditions, or privileges of the sale or rental of dwellings, or the provision of services or facilities in connection with the sale or rental of dwellings, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b), and its implementing regulations, 24 C.F.R. § 100.50(b)(1)–(3);

c.   The making unavailable or denial of dwellings to persons

because of race, color, and national origin, in violation of the Fair Housing Act, 42 U.S.C. § 3604(a), and its implementing regulations, 24 C.F.R. § 100.50(b)(1)–(3); and

d.     Discrimination against applicants with respect to credit transactions on the basis of race, color, and national origin and discouragement of applications on the basis of race, color, and national origin in violation of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691(a)(1), 1691e(g), and its implementing regulations, 12 C.F.R. pt. 1002.

## COUNT II – PATTERN OR PRACTICE OF DISCRIMINATION AND DENIAL OF RIGHTS TO A GROUP OF PERSONS

60.     The United States incorporates all prior paragraphs of the Complaint as if fully set forth herein.

61.     Persons who have been victims of Cadence Bank's discriminatory policies and practices are "aggrieved" as defined in 42 U.S.C. § 3602(i) and 15 U.S.C. § 1691e(i), and may have suffered damages as a result of the Bank's conduct in violation of both the Fair Housing Act and the Equal Credit Opportunity Act, as described above.

62.     Defendant Cadence Bank's policies and practices as alleged herein constitute:

    a.      A pattern or practice of resistance to the full enjoyment of rights secured by the Fair Housing Act, 42 U.S.C. § 3614(a), and the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(h); and

    b.      Unlawful discrimination and a denial of rights granted by the Fair Housing Act to a group of persons that raises an issue of general public importance within the meaning of 42 U.S.C. § 3614(a).

63.    The discriminatory policies and practices of Defendant Cadence Bank have been intentional and willful, and implemented with reckless disregard for the rights of individuals based on their race, color, and national origin.

## REQUEST FOR RELIEF

WHEREFORE, the United States prays that the Court enter an order that:

(1)    Declares that the conduct of Defendant Cadence Bank violates the Fair Housing Act;

(2)    Declares that the Conduct of Defendant Cadence Bank violates the Equal Credit Opportunity Act;

(3)    Enjoins Defendant, its agents, employees, and successors, and all other persons in active concert or participation with Defendant, from:

A.  Discriminating on account of race, color or national origin in any aspect of their lending business practices;

B.  Discouraging applicants on account of race, color or national origin;

C.  Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendant's unlawful practices to the position they would be in but for the discriminatory conduct;

D.  Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of Defendant's unlawful practices, and providing policies and procedures to ensure all segments of Defendant's market areas are served without regard to prohibited characteristics;

(4)   Awards monetary damages against Defendant in accordance with 42 U.S.C. § 3614(d)(1)(B) and 15 U.S.C. § 1691e(h);

(5)   Assesses a civil penalty against Defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C), in order to vindicate the public interest; and

(6)     Awards the United States any additional relief the interests of justice may require.

Dated:  August 30, 2021

Respectfully submitted,

MERRICK B. GARLAND
Attorney General

KURT R. ERSKINE
Acting United States Attorney
Northern District of Georgia

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
SAMEENA SHINA MAJEED
Chief

/s/  Marta Campos
/s/  Eliza H. Simon

/s/   Y. Soo Jo
Y. SOO JO
Assistant United States Attorney
United States Attorney's Office
Northern District of Georgia
75 Ted Turner Dr., S.W., Suite 600
Atlanta, GA 30303
Phone: (404) 581-6000
Fax: (404) 581-6181
E-mail: Soo.Jo@usdoj.gov
GA Bar 385817

/s/  Katharine F. Towt
LUCY G. CARLSON
Deputy Chief
MARTA CAMPOS
DC Bar 440680
ELIZA H. SIMON
MD Bar (no bar number)
KATHARINE F. TOWT
MA Bar 690461
Trial Attorneys
Housing & Civil Enforcement Section
950 Pennsylvania Ave. NW – 4CON
Washington, DC 20530
Phone:  (202) 514-4733
Fax:     (202) 514-1116
E-mail: Marta.Campos@usdoj.gov
           Eliza.Simon@usdoj.gov
           Katie.Towt@usdoj.gov

Attorneys for Plaintiff United States of America